IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JONATHAN DALE
BLANKENSHIP                                                                   PLAINTIFF

VS.                                                    CIVIL ACTION NO. 3:18cv848-LRA

MARCUS LAVERN HILL, *ET.
AL.*                                                                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Jonathan Dale Blankenship ["Blankenship" or "Plaintiff"], was a convicted felon in the custody of the Mississippi Department of Corrections [MDOC] housed in the Central Mississippi Correctional Facility [CMCF] in Pearl, Mississippi, at the time of the incident he complains about in this suit, November 2018. He brought this action pursuant to 42 U.S.C. § 1983 alleging that his conditions of confinement were constitutionally inadequate because of sewage water flooding. Also, he alleged that he was assaulted (by grabbing a phone from Plaintiff) and sexually threatened by one officer defendant, Marcus Lavern Hill. Hill also failed to do anything about the sewage, according to Plaintiff. He sued Defendants Carrie Williams and Joshua Lamont Hampton because they did nothing about the alleged sexual threat by Hill after Plaintiff reported it to them. Defendants are officials at the CMCF. The Court held a *Spears* hearing, and the parties consented to jurisdiction by the undersigned. Presently before the Court is Defendants' motion for partial summary judgment for failure to exhaust administrative remedies [24]

and their Motion for Summary Judgment [28]. The Court concludes that the motions should be granted.

In their motion, Defendants argue that Plaintiff did file multiple grievances relating to his claims. However, all but one of them was rejected for procedural reasons and returned to him. He was informed of how to enter the Administrative Remedy Program [ARP] but he never resubmitted his grievances. Defendants assert that these claims were not exhausted and must be dismissed. In support of their position, they submitted the June 7, 2019, affidavit of Raniece Matthews, Investigator II for the ARP at CMCF [24-1], along with Plaintiff's grievance records. They also submitted the two August 9, 2018, affidavits of Le Tresia Stewart, Investigator II for the ARP at CMCF [24-2, p. 1 and 24-3, p. 1], also with Plaintiff's pertinent grievance records.

The applicable section of the Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997(e), requires that an inmate bringing a civil rights action in federal court first exhaust his administrative remedies. *Whitley v. Hunt*, 158 F.3d 882 (5th Cir. 1998). This exhaustion requirement applies to all inmate suits about prison life. *Porter v. Nussle*, 534 U.S. 516, 523 (2002). The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory and non-discretionary. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012).

In the *Spears* hearing, Plaintiff testified that he thought he had completed the ARP process because he filed grievances, and they were rejected. He did not file a written response to the motion, although he did acknowledge receiving same at the letter filed at

[27]. He apparently does not dispute the factual allegations Defendants make regarding his attempt to exhaust his ARP remedies. He was provided a second free copy of Defendants' motions and memoranda by the Court pursuant to that Text Only Order entered February 28, 2020. However, he has not filed a written response to the motions denying Defendants' allegations regarding how he attempted to exhaust his claims.

In his Complaint, Plaintiff contends that he exhausted his remedies. Complaint [1], pp. 8-9. He claimed that he had been assaulted and sexually threatened, and that he was refused medical attention and forced to live in sewage. Yet, the ARP sent the grievances back, saying he could not complain "about how staff conduct themselves." *Id*. at 8. After the grievances were sent back, he contacted C.I.D. through the mail, and they informed him that an investigation was started. Yet, Defendant Hill continues to threaten him, according to Plaintiff. Plaintiff also alleges that he called the prison rape hotline to report the threat, but that nothing was done. Plaintiff does not explain why he did not refile his grievances, other than because the directions instructed that he could not complain about how staff members conduct themselves.

The affidavits and records attached to Defendants' partial motion for summary judgment confirm that Plaintiff did attempt to exhaust. However, he did not follow the proper procedural rules, and his grievances were returned. He never refiled the grievances in manner required by the rules, and exhaustion was not completed.

Blankenship filed five grievances on November 10, 2018, and all of them were returned to him as rejected, and he was provided a written notification of "How to Enter

the ARP Process."  In one grievance, he complained of a flooded sewer drain and complained that Defendant Hill "would not report the problem."  [24-1, p. 3].  In another, he complained that Defendant Hill used physical force on him and he did not receive medical care for his injury [24-1, p. 5].  In another, he complained that he was assaulted by Defendant Hill through his tray flap.  [24-1, p. 7].  The fourth and fifth grievances were about the flooded sewer drain.  In one, he complained that he was not provided supplies to clean it up and in the other he complained he was not allowed to shower.  [24-1, pp. 9, 11].

Plaintiff's final grievance was filed on November 11, 2018 and contains his allegation that Defendant Hill made sexual threats against him.  [24-2].  Because of the nature of the charges, the letter was forwarded to CID Director Sean Smith for investigation.  Defendants concede that this is sufficient to complete the exhaustion requirements as to this claim.  However, because Blankenship failed to file a grievance regarding Defendant Hampton or Williams's alleged failure to report the sexual threat, Defendants contend that that claim is unexhausted and should be dismissed.  [24-3].

Exhaustion will not be excused when an inmate fails to timely exhaust his administrative remedies; the exhaustion requirement also means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).  It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion.  *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).  In *Woodford*, the Supreme Court found that the PLRA's

exhaustion requirement means "proper" exhaustion, which requires a prisoner to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 83-84. *See also Gordon v. Yusuff,* No. 03-60822, 2004 WL 1551625, at *1 (5th Cir. 2004) (a federal prisoner's untimely appeal to Central Office constituted grounds for dismissal based upon non-exhaustion). It is the prison's requirements, not the PLRA, that define the requirements of exhaustion. *Jones v. Bock,* 549 U.S at 218. Accordingly, the Court finds that the applicable law requires that all steps of the ARP must be completed before the exhaustion requirement is satisfied. *See Liggins v. King,* No. 2:08cv227-MTP, 2009 WL 3246858, at *3 (S.D. Miss. Oct. 5, 2009) (dismissing suit for failure to complete each step of the ARP process). The law also requires that an inmate must fully exhaust the remedies procedures prior to filing his federal lawsuit. The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory and non-discretionary. *Gonzalez v. Seal*, 70[1, p. 2 F.3d 785, 788 (5th Cir. 2012).

The Administrative Remedy Program has been implemented by the MDOC statewide in all prisons, including CMCF, under the authority of Miss. Code Ann. section 47-5-801. MDOC's ARP involves an initial screening and two steps. *See* Inmate Handbook, MDOC, ch. VIII, *available at http://www.mdoc.ms.gov/Inmate-Info/Pages/Inmate-Handbook.aspx.* The inmate initiates the process by submitting a written request for a remedy. The ARP director performs an initial screening to determine if the request meets certain requirements. If the request is accepted, it is

5

forwarded to the appropriate MDOC official, who provides a "first-step" response on Form ARP-2. If the inmate is unsatisfied with the response, he may proceed to the "second step" by indicating this on the ARP-2, which is then forwarded to the appropriate official. The process concludes with a second-step response. If the inmate is still unsatisfied, he may then file an action in court. Of particular relevance here is the fact that while the program provides an avenue of appeal if the first step response is unsatisfactory, there is no procedure for appealing a rejection at the initial screening stage. Rather, if a grievance is rejected, an inmate's only recourse is to submit a new request in compliance with the program's requirements.

In this case, Plaintiff's grievances were all rejected for the reason that "only one complaint/request will be accepted" and that the ARP cannot accept "requests for staff to be disciplined, dictation on how staff may conduct themselves, any type of compensation, or lawsuit request…." [24-1, pp. 2, 4, 6, 8, & 10]. Three grievances also included the reason that the ARP does not accept petitions or filings on behalf of another inmate. [24-1, pp. 2, 8, & 10].

This Court has no power to approve or disapprove of the requirements of the MDOC ARP rules. As noted above, it is the prison's requirements, not the PLRA, that define the requirements of exhaustion. *Jones,* 549 U.S at 218. Complying with the rules may have been tedious and difficult, but this Court cannot say that the requirements were impossible to meet in order for Plaintiff's grievance to be accepted and exhausted.

For these reasons, Defendants' motion for partial summary judgment [24] shall be granted.

The only remaining claim is Plaintiff's assertion that Defendant Hill made sexual threats against him. Defendants filed a motion for summary judgment [28] contending that this charge does not rise to the level of a constitutional violation and must be dismissed.

In his grievance, Plaintiff charged:

> On 11-08-18 I Jonathan Blankenship between 3pm and 5 pm received many sexual threats from Officer Hill that have me in fear of my life …
> He has the capability to over power me if he puts me in handcuffs.
> On camera he told me to "suck his dick" then stuck up his middle finger to me.
> Please keep him away from me. I did *9999#.
> Relief sought: I want to be moved from this prison away from Officer Hill until something is done. I'm in fear of my life. He already assaulted me resulting in me going to the hospital.

[24-2, p. 3].

Defendants cite the cases of *Field v. Corr. Corp.*, 364 F.App'x 927, 930 (5th Cir. 2010), and *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995), along with numerous other cases, for the law that crude, unprofessional, or harassing remarks, even verbal threats by prison staff to an inmate, do not rise to the level of a constitutional violation. The federal law does not provide a remedy for every *wrong* committed against a prisoner in custody, even if the alleged actions of a defendant may be morally and ethically wrong. In general, the federal courts cannot monitor "words," whether threatening or abusive, when no actual physical injury [or realistic fear of impending injury] is committed. Plaintiff has been moved from

7

CMCF, and there is no contention that Defendant Hill would have sexually abused him. This Court would be inundated with lawsuits from the majority of prisoners currently incarcerated if verbal abuse constituted a constitutional violation. This Court can only provide a remedy when the alleged actions of a defendant violated some right of the plaintiff which is secured by the United States Constitution or federal law.

In the instant case, Plaintiff has stated no right which the defendant has violated which is cognizable under the law. Plaintiff alleged that Defendant Hill told him to commit a sexual act on him [Hill] and that phrase is often used merely as an insult, not as a literal request. Raising one's middle finger to another is also a common insult. It is clear that mere words and gestures--no matter how threatening or antagonistic---do not state a claim of constitutional dimension. *See McFadden v. Lucas*, 713 F.2d 143, 147 (5th Cir. 1983) (mere words do not state a claim of constitutional deprivation under 42 U.S.C. §1983). The claim that Plaintiff was verbally and sexually harassed does not rise to the level of a constitutional violation.

Accordingly, the motion for summary judgment [28] is hereby **granted**, and this claim is dismissed with prejudice. Defendants' motion for partial summary judgment [24] is hereby **granted**, and those claims shall be dismissed without prejudice.

A separate judgment will be entered.

SO ORDERED this the 31st day of March 2020.

/s/__Linda R. Anderson_____
UNITED STATES MAGISTRATE JUDGE